# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| v. | : | NO. 06-222 |
| MICAH SOLOMON,<br>Defendant. | : | CIVIL ACTION |
| | : | NO. 09-924 |

## Memorandum

YOHN, J.                                                                                                              August 6, 2009

Micah Solomon pleaded guilty to a nine count superceding information. At sentencing, the court sentenced Solomon to a total of ninety-five months' imprisonment to be followed by five years' supervised release. The court also ordered Solomon to pay $1,028,955.84 in restitution and a $900 special assessment, and the court entered a forfeiture money judgment against Solomon in the amount of $2,639,474.78. Defendant moves to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The court will deny his motion in large part, but order supplemental briefing on the issues of restitution and forfeiture.

**I.      FACTS AND PROCEDURAL HISTORY**

Solomon engaged in fraudulent purchases of real property and luxury automobiles. On January 8, 2007, Solomon pleaded guilty to a superceding information charging five counts of giving false statements on loan applications in violation of 18 U.S.C. § 1014 (counts I-V); two counts of mail fraud in violation of 18 U.S.C. § 1341 (counts VI-VII); one count of bank fraud in violation of 18 U.S.C. § 1344 (count VIII); and one count of aggravated identity theft in violation

of 18 U.S.C. § 1028A(a)(1) (count IX).[1]  Under the guilty plea agreement, Solomon waived several rights.  Solomon "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to [his] prosecution, whether such a right to appeal or collateral attack arises under . . . 28 U.S.C. § 2255 or any other provision of law."  (Guilty Plea Agreement ¶ 8.)  Additionally, Solomon agreed "not to contest forfeiture as set forth in the notice of forfeiture . . . ."  (*Id.* ¶ 1.)  Solomon also acknowledged in the agreement that he was "satisfied with the legal representation provided" by his attorney, (*id.* ¶ 9), and confirmed that his plea agreement did not contain "additional promises, agreements or understandings other than those set forth" in the plea agreement, (*id.* ¶ 10).

On January 8, 2007, the court held a guilty plea hearing to determine whether Solomon's decision to plead guilty was knowing and voluntary.  The government summarized the plea agreement in open court, (Tr. Guilty Plea Hr'g 20:16-23:5), after which the court confirmed: (1) that Solomon agreed to the accuracy of the summary, (2) that Solomon understood that the written plea agreement, not the summary, constituted the actual plea agreement, (3) that Solomon read and understood the plea agreement, (4) that Solomon had time to discuss the agreement with his attorney and to decide to plead guilty under the agreement, and (5) that Solomon signed, understood, and agreed to the agreement, (*id.* 23:7-25:5).  Next, the government summarized the essential elements of each charge, (*id.* 25:24-27:12), after which the court confirmed that Solomon knew and understood the elements of the charges he faced.  (*Id.* 27:14-16).  The court also explained to Solomon the many rights he was waiving by signing the agreement, including

---

[1] Solomon also pleaded guilty to aiding and abetting the violations charged in all nine counts.  (Tr. Guilty Plea Hr'g 5:18-21.)

his collateral attack rights. (*Id.* 20:3-9.) Solomon confirmed that he wished to waive these rights. (*Id.* 20:11-15.) Finally, Solomon stated that no person forced or threatened him to plead guilty and that no person made promises to him in exchange for pleading guilty, other than those set forth in the written plea agreement. (*Id.* 25:6-12.) After conducting this colloquy, the court found Solomon competent to plead guilty and found that his plea was free and voluntary and not the result of any force or threats or any promises apart from those contained in the written plea agreement.[2] (*Id.* 33:13-16.)

On November 7, 2007, the court sentenced Solomon to ninety-five months' imprisonment, consisting of seventy-one months on counts I-VIII and twenty-four months on count IX to be served consecutively. The court also sentenced Solomon to serve five years of supervised release for counts I-V and VIII, three years of supervised release for counts VI-VII, and one year of supervised release for count IX, each to be served concurrently. In addition, the court ordered Solomon to pay $1,028,955.84 in restitution and a $900 special assessment. The court also entered a forfeiture money judgment against Solomon in the amount of $2,639,474.78. Defendant filed an appeal to the Third Circuit. The government filed a motion to enforce the defendant's appellate waiver and for summary affirmance. On March 19, 2008, the Third Circuit entered an order granting the government's motion. Defendant's petition for en banc rehearing was denied on July 14, 2008.

On September 11, 2008, Solomon filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), which the court later permitted Solomon to re-

---

[2] In addition, the court confirmed that Solomon reads, writes and understands the English language and that he has three years of college credits. (Tr. Guilty Plea Hr'g 5:18-21.)

characterize as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. In his motion, Solomon raises three claims: (1) the court exceeded its statutory and constitutional authority by approving the forfeiture money judgment and entering an erroneous restitution order; (2) Solomon's appointed counsel was constitutionally ineffective; and (3) 28 U.S.C. § 1028A, the subject of count IX, is unconstitutionally vague. The parties have fully briefed the motion.

## II.     WAIVER

If a defendant, as part of a plea bargain, waives his right to appeal or collaterally attack a judgment, that waiver is "generally permissible" and will be upheld "if entered into knowingly and voluntarily," unless enforcing the waiver works "a miscarriage of justice." *United States v. Khattak*, 273 F.3d 557, 558 (3d Cir. 2001); *see United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008). Regarding whether enforcement of a waiver would work a miscarriage of justice, the Third Circuit, in *Khattak*, 273 F.3d at 563, and *Mabry*, 536 F.3d at 242-43, endorsed the First Circuit's approach in *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001). The *Teeter* court recognized that:

> the term "miscarriage of justice" is more a concept than a constant. Nevertheless, some of the considerations come readily to mind: the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result. Other considerations doubtless will suggest themselves in specific cases.

*Teeter*, 257 F.3d at 26.

### A.     Knowing and Voluntary Waiver

The court begins with the "threshold issue" of whether the waiver of collateral attack rights in Solomon's "plea agreement was knowing and voluntary." *Mabry*, 536 F.3d at 237. As I did during the guilty plea hearing, I find that Solomon knowingly and voluntarily entered into a plea agreement that included a provision waiving his right to collaterally attack his conviction and sentence using § 2255. The agreement provided that "the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under . . . 28 U.S.C. § 2255, or any other provision of law." (Guilty Plea Agreement ¶ 8.) The court's colloquy with defendant confirms that his waiver of collateral attack rights was knowing and voluntary.[3] Based on the plain language of the guilty plea agreement and Solomon's own statements to the court, the court concludes that Solomon's plea was knowing and voluntary.[4]

---

[3] The following exchange occurred between the court and Solomon at the guilty plea hearing:
- Q. Also, ordinarily, you'd have the right to bring a later proceeding, known as a collateral attack by filing a federal *habeas corpus* motion to vacate, set aside, or correct your sentence under Section 2255. Your guilty plea agreement absolutely prohibits your from using these later proceedings under that section of the code to attack—to—to make a collateral attack upon your conviction; do you understand that?
- A. Yes, your Honor.
- Q. And do you agree to waive your rights to such a later appeal—
- A. Yes, your Honor.
- Q. —of a collateral attack?
- A. Yes, your Honor.

(Tr. Guilty Plea Hr'g 20:3-15.)

[4] Though Solomon's instant motion implicates his collateral attack waiver, the court notes that the Third Circuit previously enforced his appellate waiver. Significantly, during the guilty

5

Accordingly, Solomon is barred from collaterally attacking his conviction unless enforcing his waiver would work a miscarriage of justice.

### B.     Miscarriage of Justice

Solomon asserts that enforcing the collateral attack waiver would constitute a miscarriage of justice on several grounds, many of which parallel his substantive claims for relief. First, Solomon argues that his counsel was constitutionally ineffective in several ways in connection with the guilty plea negotiations. Second, Solomon contends that 28 U.S.C. § 1028A is unconstitutionally vague, presuming that such a finding would be a basis for overcoming his waiver. Finally, Solomon argues that the court grossly miscalculated the amounts in the restitution and forfeiture orders and must, therefore, revisit both orders. With the exception of the restitution order and the forfeiture judgment, all of Solomon's claims fail to overcome the waiver.

#### 1.     Ineffective assistance of counsel

Solomon asserts that he was denied effective assistance of counsel in connection with his decision to plead guilty.[5] Solomon contends that his counsel, working behind his back with the government, told Solomon that the government would charge his wife if Solomon did not plead

---

plea colloquy, I addressed Solomon's collateral attack waiver in the same manner I addressed his appellate waiver. (*See* Tr. Guilty Plea Hr'g 19:17-20:2.)

[5] Throughout his briefing, Solomon also peppers the court with random allegations of ineffective assistance of counsel for matters unrelated to his plea agreement. These claims fail because they are not related to the negotiation of the guilty plea agreement. *See, e.g.*, *Nunez v. United States*, Civ. No. 07-1193, 2008 WL 2705016, *3 (D.N.J. July 8, 2008) (reasoning that ineffective assistance of counsel can overcome waiver "only if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious" (internal quotation omitted)).

guilty to the superceding information.  Solomon also contends that his attorney should have recognized that he is actually innocent of the crimes charged in counts III, IV, VI, and VII, and that failure constitutes ineffective assistance of counsel.  The government asks the court to uphold the waiver because the record does not support Solomon's contentions.

The Third Circuit has implied that defendants may seek habeas relief for some potentially viable ineffective assistance of counsel claims, notwithstanding collateral-attack waivers.  *See United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007).  To establish that his counsel was constitutionally ineffective, Solomon must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A defendant may not, however, circumvent a collateral-attack waiver simply by claiming ineffective assistance of counsel.  A waiver will be enforced if the ineffective assistance of counsel claim is not potentially viable.  *See United States v. Wilson*, 429 F.3d 455, 458-59 (3d Cir. 2005) (acknowledging coercion may overcome waiver, but finding that colloquy established that plea was knowing and voluntary).

Solomon first contends that his attorney was ineffective when he coerced Solomon into pleading guilty.  Solomon asserts his attorney, John Griffin, visited him at the Federal Detention Center on or about December 6, 2006, and told him that the government was going to indict his wife, Andrea Solomon, if he did not plead guilty.  Griffin stated that this warning came from Assistant United States Attorney Susan Fields.  Solomon contends, however, that while he initially believed that Fields made these threats, Griffin misrepresented the government's

position.[6] Relying on Griffin's misrepresentations, Solomon decided to sign a guilty plea agreement just three days before trial.

The Third Circuit has implied that a defendant may seek habeas relief, notwithstanding a collateral-attack waiver, where the defendant was coerced into signing a plea agreement. *See Mabry*, 536 F.3d at 243 (implying that "allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver" may constitute miscarriage of justice); *Wilson*, 429 F.3d at 458 (finding that it would constitute miscarriage of justice to enforce appellate rights waiver if government coerced defendant into signing the plea agreement). Solomon's coercion claim, however, is not potentially viable because Solomon fails to demonstrate that his attorney's performance was deficient. Solomon's argument rests on an unsubstantiated assertion that contradicts his own statements during the guilty plea colloquy. The court specifically asked Solomon whether any person made promises to him that were not contained in the guilty plea agreement (i.e., that the government would *not* charge Solomon's wife if he pleaded guilty). Solomon denied the existence of any such promises. Further, the court repeatedly asked Solomon if he was satisfied with his counsel. Solomon consistently confirmed that he was. In light of Solomon's own statements to the court, I find no basis to conclude that his decision to plead guilty was the result of coercive representation, and, therefore,

---

[6] In his response brief, defendant claims that the government deliberately deceived him. This seems to be contrary to his claim that his attorney, and not the government, deceived him concerning the government's intentions to indict his wife. Nevertheless, on the whole, Solomon's allegations of deception appear to be aimed at Solomon's attorney. Regardless, as I discuss below, to the extent that Solomon contends that the government misled him, his claim fails.

no reason to displace the waiver.[7] *See Wilson*, 429 F.3d at 460 (determining after review of district court's colloquy that defendant's plea agreement was knowing and voluntary and not product of coercion).[8]

In Solomon's second ineffective assistance of counsel claim, he contends his attorney was ineffective because his attorney failed to advise Solomon that his actions did not satisfy the elements necessary for conviction of the crimes charged in counts III, IV, VI, and VII. Even assuming that such ineffective assistance is sufficient to serve as a basis for finding a miscarriage of justice, Solomon has not demonstrated, in any way, that his attorney's representation was deficient in conveying to Solomon the elements of the crimes charged. Thus, Solomon fails to establish the first prong of the *Strickland* test. Moreover, even if his counsel was deficient in

---

[7] Along similar lines, to the extent that Solomon contends that the government misrepresented its intention to prosecute Solomon's wife, his claim fails because nothing in the record supports this claim. Instead, Solomon's own testimony concerning the plea agreement defeats his claim against the government for the same reason it defeats his claim against his counsel.

[8] I note that after having pleaded guilty, Solomon moved the court to withdraw his guilty plea. The court held an extensive evidentiary hearing on the issues raised that motion. During the hearing, Solomon offered the same fraudulent inducement argument he offers in connection with this motion. Solomon, his wife, Griffin, and Fields all testified. As the court prepared to offer its ruling, Solomon abruptly withdrew his motion. Nonetheless, I still articulated my findings for the record, and these findings further support the enforcement of the collateral attack waiver:
> I have gone through the testimony and have reviewed all of the facts. And without stating them all at this time it is quite clear to me that the defendant's first allegation that he was fraudulently induced to plead guilty . . . so his wife would not be indicted has absolutely no credibility[;] all the lawyers who testified[,] testified to the contrary in one degree or another. And it's quite clear to me, crystal clear, that preventing his wife from being indicted was no factor at all at the time he decided to plead guilty in December and when he entered the guilty plea in January.

Tr. Mot. Withdraw Guilty Plea Evid. Hr'g 3:17-4:3, Aug. 7, 2007.)

explaining to Solomon the elements of the charged offenses, Solomon did not suffer any prejudice because (1) the elements were explained in detail to Solomon during the plea colloquy, and the court confirmed that Solomon understood the elements prior to accepting his guilty plea; and (2) the government summarized the facts that it was prepared to prove at trial, Solomon admitted that the facts accurately set forth the events as he recalled them, and I confirmed that the facts fit the charges against him. Lastly, despite Solomon's contention, he has not made a colorable showing of actual innocence,[9] and the record reveals that his actions satisfy the elements of the crimes charged in counts III, IV, VI, and VII.[10]

---

[9] Solomon also raised actual innocence in connection with his motion to withdraw his guilty plea. As I did with respect to his fraudulent inducement claim, I articulated my findings concerning Solomon's actual innocence argument after Solomon withdrew his motion:
> [W]ith reference to his claim of legal innocence I also find that there is no credibility to that [claim] in view of the extensive testimony by Mr. Griffin and Ms. Fields about the defendant's own involvement in picking the charges to which he would plead guilty and acknowledging them in the guilty plea agreement.

(Tr. Mot. Withdraw Guilty Plea Evid. Hr'g 4:4-9.)

[10] In count III, Solomon pleaded guilty to giving false statements for the purpose of influencing the actions of Fremont Investment and Loan. Solomon argues that the record does not identify any act that Solomon committed in furtherance of this violation. To the contrary, the superceding information clearly states that "Solomon fraudulently verified to the mortgage company [Fremont Investment & Loan] that the buyer [of a property] worked for his company so that the sale would go through . . . ." (Superceding Information at 10, ¶ 3); *see States v. Broce*, 488 U.S. 563, 570 (1989) (reminding that by pleading guilty, defendant admits facts in indictment). Thus, the record supports that Solomon made false statements to induce the mortgage company to approve the mortgage, and Solomon's argument fails.

In count IV, Solomon pleaded guilty to giving false statements for the purpose of influencing the actions of J.P. Morgan Chase, N.A. and Bank of New York in violation of 18 U.S.C. § 1014. Under § 1014, it is a crime to make false statements for the purpose of, *inter alia*, influencing the decision of a financial institution insured by the Federal Deposit Insurance Company ("FDIC"). Solomon contends that § 1014 does not extend to his action because he made his false statements to customers of J.P. Morgan Chase and Bank of New York, and not to the banks directly. Solomon provided false information to Mortgage Lenders Network and America's Wholesale Lender, mortgage companies that are not federally insured. Though these mortgage companies approved the loan, J.P. Morgan Chase and Bank of New York, both FDIC

Therefore, the court finds that Solomon's second ineffective assistance of counsel argument is insufficient to overcome the collateral attack waiver.

### 2. Count IX: Void for Vagueness

In count IX, Solomon pleaded guilty to knowingly transferring, possessing, and using a means of identification of another person in violation of 18 U.S.C. § 1028A(a)(1). Solomon argues that the statute is "vague" as to the *mens rea* requirement. His argument relies on *Flores-*

---

insureds, extended the funds for the mortgage based on the information Solomon gave to the mortgage companies. To be found guilty under § 1014, Solomon need only intend for his fraudulent statements to impact a bank. *See, e.g.*, *United States v. McDow*, 27 F.3d 132, 135 (5th Cir. 1994) (stating that under § 1014, defendant need not "actually make the false statement directly to the insured institution to be found guilty" so long as defendant intended to influence a bank). Here, a reasonable juror could have found that Solomon, who had repeated exposure to mortgage companies, banks, and other lending institutions, understood and intended that his fraudulent statements would influence the actions of the banks that ultimately released the funds. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (stating that for finding of actual innocence, evidence must be such that "no reasonable juror would have convicted" defendant). Because a reasonable juror could make such a finding, Solomon's actual innocence claim fails.

Finally, in counts VI and VII, Solomon pleaded guilty to two counts of mail fraud in violation of 18 U.S.C. § 1341 arising from the purchase of two luxury motor vehicles. Solomon provided two car dealerships false information in connection with procuring financing. The dealerships approved Solomon for financing via the internet and then sent the signed loan applications to the respective lending institutions by mail. Solomon contends that he received the vehicles prior to use of the "mail" and, therefore, he is innocent of the mail fraud charge. "To be part of the execution of the fraud, . . . [i]t is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.'" *Schmuck v. United States*, 489 U.S. 705, 710-11(1989) (quoting *Badders v. United States*, 240 U.S. 391, 394 (1916)) (alterations in *Schmuck*). However, "a mailing cannot be said to be in furtherance of a scheme to defraud, nor can a mailing be considered even incident to an essential part of the scheme, when it occurs after the scheme has reached fruition." *United States v. Yusuf*, 536 F.3d 178, 187 (3d Cir. 2008). Here, while the mailing occurred after Solomon received the vehicle, a reasonable juror could find that the car dealer would need to send the signed loan applications to the selected lenders, that such a mailing was a step in Solomon's overall plot, and that Solomon's plot did not reach fruition until the lender received and reviewed the signed loan applications. *Cf. United States v. Hitchens*, 00-6454, 2001 WL 1257167, *4 (E.D. Pa. Oct. 19, 2001) (finding evidence offered at trial sufficient to show use of mail where mortgage company would send loan application packets to lenders). Because a reasonable juror could make such a finding, Solomon's argument fails.

*Figuero v. United States*, in which the Supreme Court held that to establish a violation of § 1028A(a)(1), the government must "show that the defendant knew that the means of identification at issue belonged to another person." 129 S. Ct. 1886, 1894 (2009). Solomon argues that, because this issue had not yet been settled at the time of his case, the statute is vague. This argument misses the mark. When the Supreme Court interprets a statutory provision for the first time, the Court is not curing an unconstitutionally vague statute; rather the Court is explaining what the statute meant "ever since the statute was enacted." *See Bousley v. United States*, 523 U.S. 614, 625 (1998) (Stevens, J., concurring). Solomon's argument is better understood as another actual innocence claim. Specifically, Solomon contends that though he transferred the personal identification of another person, he did not know at the time that it was stolen. This contention is frivolous. The superceding information makes repeated reference to Solomon's knowing use of another person's identity, (*See* Superceding Information at 4-6, 18-19, 24), as required by § 1028A(a)(1). *Flores-Figuero*, 129 S. Ct. at 1894. Solomon, therefore, does not "stand[] convicted of 'an act that the law does not make criminal.'" *Bousley*, 523 U.S. at 620 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). Thus, Solomon has not demonstrated any miscarriage of justice with respect to count IX.[11]

### 3. Calculation of Restitution and Forfeiture

In addition to waiving his right to file a collateral attack, Solomon also specifically waived his right to challenge the restitution order and the forfeiture money judgment. (*See*

---

[11] Solomon also contends that the he believed the stolen identity belonged to "Carmen Ellis" when in fact it belonged to "Caren Ellis." This argument is also frivolous. Solomon knew that the identification belonged to "another person" whether that person was Carmen or Caren Ellis.

Guilty Plea Agreement ¶¶ 1, 8); *see also United States v. Perez*, 514 F.3d 296, 299 (3d Cir. 2007) (holding that restitution is part of sentence, and waiver of right to appeal the sentence includes waiver of right to appeal the restitution order). Yet, Solomon presently attempts to challenge both. Solomon essentially argues that the court should overcome the waiver because of gross miscalculations in the restitution order and the forfeiture money judgment. Solomon does not provide, and the court has not found, case law specifically holding that such a miscalculation can serve as a basis for displacing an otherwise knowing and voluntary waiver. Nonetheless, because the Third Circuit has adopted a flexible standard for determining if the enforcement of a waiver constitutes a miscarriage of justice, the court will proceed to review both orders. *See Khattak*, 273 F.3d at 563 (declining to "earmark specific situations" where enforcing waiver would constitute miscarriage of justice).

      Turning first to restitution, Solomon argues that the court miscalculated the loss incurred by the injured party in count VIII because Solomon made, prior to pleading guilty, a one-time payment of $126,330.93 to Harleysville National Bank. Solomon contends that bank records will reflect such a payment. The government does not address this issue, relying instead on the waiver. Because the government does not address this issue, the court is unable to determine whether Solomon made the claimed payment to Harleysville National Bank and, if so, whether he was given credit for it. Therefore, the court will order supplemental briefing on the issue of restitution that is still due at this time. Although this may technically not be appropriate for a § 2255 proceeding, Solomon is entitled to a current statement of the restitution payments that have been credited to his account.

Next, Solomon asserts that the court erred, and therefore exceeded its statutory authority, when it entered a forfeiture judgment in the amount the government requested. Solomon claims that, having already forfeited the properties and vehicles procured through his illegal actions, he is entitled to an offset in the forfeiture order pursuant to 18 U.S.C. § 981(a)(2)(C). Aside from asserting that he is entitled to an offset, Solomon does not provide the court a metric for arriving at what he believes is the proper forfeiture amount. Moreover, the government has not addressed this issue at all. Though the court doubts that an incorrect calculation of the forfeiture judgment will constitute a miscarriage of justice sufficient to overcome Solomon's waiver, the court is unable to make such a determination without the basis for each party's forfeiture calculation. Once again, the defendant is entitled to such an accounting. Thus, the court will order supplemental briefing on this narrow issue.